FILED IN CLERKS OFFICE 2026 OCT -5 A 9:06 U.S. DISTRICT COURT DISTRICT OF MASS.

**UNITED STATES STRICT COURT**

**DISTRICT OF MASSACHUSETTS**

**DIANA NATALE,**

Plaintiff,

v.

**JENNIFER JACKSON PRINCE,**

Defendant.

**Civil Action No.** ____________

**CIVIL COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff Diana Natale, appearing pro se, brings this civil action against Defendant Jennifer Jackson Prince for damages and appropriate equitable relief arising from the alleged repeated publication of materially false factual accusations, alleged unauthorized acquisition and dissemination of private electronic material, alleged interception, disclosure or use of communications where the statutory elements are established, and an alleged continuing course of targeted online conduct. Plaintiff Diana Natale alleges as follows:

**I. NATURE OF THE ACTION**

1. This action concerns an alleged continuing course of conduct directed at Plaintiff Diana Natale through YouTube, Reddit, email, podcasts, livestreams, and other Internet communications.

2. Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly published or republished materially false factual accusations that Plaintiff Diana Natale committed serious criminal and sexual misconduct, including accusations concerning a young woman allegedly held in a basement, accusations involving minors, accusations relating to the disappearance of Jennifer Fay, and accusations relating to the death of Plaintiff Diana Natale's deceased son, Keith Natale.

3. Plaintiff Diana Natale alleges that Jennifer Jackson Prince also obtained, possessed, transmitted, displayed, discussed, or disseminated private electronic material, including Ring-related material and private communications, without Plaintiff Diana Natale's authorization.

4. Plaintiff Diana Natale further alleges that Jennifer Jackson Prince participated in a continuing pattern of electronic targeting, threats or threatening material, dissemination of personal and residential information, age-focused ridicule, and publications involving Plaintiff Diana Natale's deceased son and gravesite.

5. Plaintiff Diana Natale seeks relief only for conduct legally attributable to Jennifer Jackson Prince and does not seek to impose liability upon Jennifer Jackson Prince merely because an unrelated third party independently published material concerning Plaintiff Diana Natale.

**II. PARTIES**

6. Plaintiff Diana Natale is an individual and citizen of Massachusetts residing at 100 Village Way, Westport, Massachusetts 02790.

7. Plaintiff Diana Natale is over sixty years of age.

8. Defendant Jennifer Jackson Prince is, upon information and belief, an individual domiciled in and a citizen of South Carolina, with an address at 240 Oliver Road, Walhalla, South Carolina 29691.

9. Plaintiff Diana Natale alleges that telephone number (864) 364-9464 belongs to Jennifer Jackson Prince and that this information was independently rechecked by a private investigator. Plaintiff Diana Natale pleads this allegation based upon her preserved evidence and the investigator's verification, not upon a screen name alone.

## III. SUBJECT-MATTER JURISDICTION

10. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff Diana Natale and Jennifer Jackson Prince are citizens of different States and Plaintiff Diana Natale alleges that the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 over the federal claims pleaded under the Stored Communications Act, 18 U.S.C. §§ 2701 and 2707, and the Federal Wiretap Act, 18 U.S.C. §§ 2511 and 2520, to the extent the evidence establishes the statutory elements of each claim.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the related Massachusetts-law claims because those claims arise from the same alleged course of conduct and form part of the same case or controversy.

## IV. PERSONAL JURISDICTION

13. Plaintiff Diana Natale alleges that Jennifer Jackson Prince purposefully directed repeated communications, publications, and electronic conduct toward Plaintiff Diana Natale in Massachusetts and repeatedly focused upon Plaintiff Diana Natale's Massachusetts residence, Massachusetts litigation, Massachusetts housing, and activities occurring in Massachusetts.

14. Plaintiff Diana Natale alleges that Jennifer Jackson Prince knew Plaintiff Diana Natale lived in Massachusetts and intentionally directed the challenged conduct toward Plaintiff Diana Natale there, causing alleged injury in Massachusetts.

15. Plaintiff Diana Natale alleges that the exercise of personal jurisdiction is authorized by the Massachusetts long-arm statute, G.L. c. 223A, § 3, to the extent applicable to the conduct proved, and is consistent with due process.

## V. VENUE

16. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(b)(2) because Plaintiff Diana Natale alleges that a substantial part of the events or omissions giving rise to the claims occurred in, were directed into, or caused injury in Massachusetts.

## VI. PRIOR NOTICE AND PRIOR STATE-COURT PROCEEDINGS

17. On October 21, 2022, Plaintiff Diana Natale sent Jennifer Jackson Prince a written cease-and-desist notice by certified mail addressed to 240 Oliver Road, Walhalla, South Carolina 29691.

18. The October 21, 2022 notice demanded that Jennifer Jackson Prince cease alleged defamation, slander, libel, false accusations, threatening telephone calls, and social-media publications. The notice described alleged conduct occurring from approximately May 2021 through October 18, 2022.

19. Plaintiff Diana Natale alleges that additional legal notices, preservation communications, and litigation-related communications were subsequently sent to Jennifer Jackson Prince by mail and/or email.

20. Plaintiff Diana Natale pleads the notices as evidence that Jennifer Jackson Prince had notice that Plaintiff Diana Natale disputed the accusations and objected to the challenged conduct; the notices themselves are not pleaded as proof that every disputed statement was false.

21. Jennifer Jackson Prince was previously named as a defendant in Natale v. Barstool Sports, Inc., et al., Bristol Superior Court Civil Action No. 2573CV00305.

22. Plaintiff Diana Natale alleges that legal papers concerning Jennifer Jackson Prince had been served, but the state court dismissed the claims against Jennifer Jackson Prince without prejudice because completed service had not been filed or completed to the court's satisfaction.

23. The prior dismissal was not an adjudication on the merits of Plaintiff Diana Natale's claims against Jennifer Jackson Prince.

24. To the extent applicable, Plaintiff Diana Natale invokes any protection available under Massachusetts G.L. c. 260, § 32 concerning a timely action dismissed for a matter of form, without asking this Court to decide that issue at the pleading stage beyond what the record supports.

25. Plaintiff Diana Natale possesses audiovisual or Internet evidence that she alleges depicts Jennifer Jackson Prince displaying and burning litigation-related legal papers during Reddit content and stating, "I'm fucking NOT going to ever see you in court Diana."

26. Plaintiff Diana Natale pleads the alleged burning and statement as evidence relevant to knowledge, intent, and the alleged course of conduct. Plaintiff Diana Natale does not allege solely from that event that Jennifer Jackson Prince legally caused the prior service defect.

27. Plaintiff Diana Natale alleges that the challenged conduct continued and expanded after the state-court dismissal.

## VII. IDENTIFICATION OF JENNIFER JACKSON PRINCE AND PRESERVED EVIDENCE

28. Plaintiff Diana Natale alleges that she identifies Jennifer Jackson Prince through a combination of preserved communications, account information, audiovisual material, telephone information, publications, and other evidence, rather than solely from a screen name or a single photograph.

29. Plaintiff Diana Natale alleges that Jennifer Jackson Prince used, controlled, participated in, authorized, adopted, or republished material through accounts or channels associated in Plaintiff Diana Natale's evidence with names including "JJ," "JJ Case Work," Beauty undermadness and after Reddit shut here down, Jennifer Jackson Prince started yet another group Beautyundermadnessxo on Reddit, and online content concerning Plaintiff Diana Natale.

30. Plaintiff Diana Natale has preserved substantial physical and electronic evidence, including emails, screenshots, photographs, court records, URLs, recordings, videos, and social-media material. The allegations below identify representative events and do not purport to reproduce every preserved item.

31. Where the precise technical source, original recorder, device, login, Internet Protocol address, or transmission path is not yet known, Plaintiff Diana Natale expressly pleads that the mechanism remains to be determined through discovery and does not invent a technical method of acquisition.

## VIII. FACTUAL ALLEGATIONS

### A. Repeated False Factual Accusations

32. Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly published or republished accusations portraying Plaintiff Diana Natale as having committed serious crimes and sexual misconduct.

33. Among the accusations Plaintiff Diana Natale alleges were published or republished by Jennifer Jackson Prince were assertions that Plaintiff Diana Natale chained or held a young woman in a basement and allowed men to assault or rape her sexually. That her own sons sexually assaulted or raped her

34. Plaintiff Diana Natale alleges that Jennifer Jackson Prince published or republished accusations that Plaintiff Diana Natale alleges that Jennifer Jackson Prince falsely accused Plaintiff Diana Natale of engaging in sexual conduct with young neighborhood boys. Among the statements Plaintiff Diana Natale attributes directly to Jennifer Jackson Prince is the statement that Plaintiff Diana Natale **"took young neighborhood boys for rides and gave them fucking blowjobs."** Plaintiff Diana Natale alleges that this statement was false, was presented to an Internet audience

as a factual accusation concerning Plaintiff Diana Natale's conduct and falsely accused Plaintiff Diana Natale of serious sexual misconduct.

35. Plaintiff Diana Natale alleges that Jennifer Jackson Prince published or republished accusations that Plaintiff Diana Natale raped or sexually abused a young girl.

36. Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly published and/or republished false factual accusations that Plaintiff Diana Natale was involved in the disappearance and suspected death of Jennifer Fay, knew what happened to Jennifer Fay, and possessed information concerning what was done to her. Jennifer Jackson Prince further represented to Internet audiences that Plaintiff Diana Natale and members of the Natale family were among the principal suspects in Jennifer Fay's case and invoked purported police, detectives, private investigators, and other alleged sources in an effort to present those accusations as supported by evidence or official suspicion. Plaintiff Diana Natale categorically denies these accusations and alleges that Jennifer Jackson Prince's statements falsely implicated Plaintiff Diana Natale in extraordinarily serious criminal conduct concerning the disappearance of Jennifer Fay.

37. Plaintiff Diana Natale alleges that Jennifer Jackson Prince published and/or republished false and extraordinarily serious accusations concerning Plaintiff Diana Natale's deceased son, **Keith Natale**, including accusations that Plaintiff Diana Natale killed, caused, or was responsible for Keith Natale's death. Plaintiff Diana Natale further alleges that Internet material attributable to Jennifer Jackson Prince used photographs and images of Keith Natale and his gravesite as part of the continuing campaign directed at Plaintiff Diana Natale, including material written or presented as though Keith Natale himself were stating words to the effect of **"My mom killed me,"** together with degrading grave, cemetery, coffin, and death-related imagery. Plaintiff Diana Natale alleges that Jennifer Jackson Prince used Keith Natale's death and gravesite to falsely portray Plaintiff

Diana Natale as responsible for her own son's death and to humiliate, torment, and inflict emotional distress upon Plaintiff Diana Natale. Plaintiff Diana Natale **categorically and unequivocally denies that she killed, caused, contributed to, or was responsible in any manner for the death of Keith Natale.**

38. Plaintiff Diana Natale categorically and unequivocally denies the foregoing accusations concerning criminal conduct, sexual misconduct involving minors or young neighborhood boys, abuse, rape, and involvement in or knowledge concerning the disappearance of Jennifer Fay. Plaintiff Diana Natale alleges that these accusations are false and were published and/or republished to Internet audiences as factual accusations concerning Plaintiff Diana Natale.

39. Plaintiff Diana Natale alleges that these accusations were communicated to third parties through Internet publications, including YouTube, Reddit, podcasts, livestreams, and related republications.

40. Plaintiff Diana Natale alleges that the accusations were presented as statements of fact or as claims purportedly supported by proof, evidence, police, detectives, private investigators, records, videos, or other asserted sources.

41. Despite having received prior notice that Plaintiff Diana Natale specifically denied and disputed these accusations, Jennifer Jackson Prince allegedly continued to publish and/or republish the challenged factual accusations to Internet audiences. Plaintiff Diana Natale alleges that the continuation and repetition of these accusations after such notice is relevant to Jennifer Jackson Prince's knowledge, intent, and any applicable standard of fault.

42. Plaintiff Diana Natale alleges that the challenged publications did not cease after legal notices, preservation demands, or litigation concerning the publications. Instead, the alleged conduct continued and expanded through additional YouTube videos, livestreams, Reddit publications,

podcasts, emails, republications, and the continuing Internet series concerning Plaintiff Diana Natale.

43. Plaintiff Diana Natale alleges that the repeated publication and republication of these serious accusations exposed Plaintiff Diana Natale to contempt, ridicule, hatred, distrust, reputational injury, and an increasingly hostile Internet audience. Plaintiff Diana Natale further alleges that persons participating in, appearing on, following, or interacting with podcasts, YouTube content, livestreams, Reddit communities, and related Internet publications concerning Plaintiff Diana Natale made threatening statements and expressed or encouraged forms of purported **"vigilante justice"** against Plaintiff Diana Natale. Plaintiff Diana Natale alleges that she received and preserved threats of physical violence and other threatening communications during this continuing online campaign, causing fear for her physical safety in addition to reputational and emotional harm. Plaintiff Diana Natale does not attribute every independent third-party threat to Jennifer Jackson Prince merely because the person viewed or participated in related content; rather, Plaintiff Diana Natale alleges Jennifer Jackson Prince is responsible for her own statements, publications, encouragement, participation, republication, and any third-party consequences for which causation and legal responsibility are established by the evidence.

44. Plaintiff Diana Natale alleges that the repeated accusation of serious crimes and sexual misconduct was especially damaging because the publications were not confined to a private dispute but were broadcast and republished to Internet audiences.

45. Plaintiff Diana Natale does not base her defamation claim on mere insults, name-calling, protected opinion, or rhetorical hyperbole standing alone; the claim is directed to materially false factual assertions and republications legally attributable to Jennifer Jackson Prince.

**B. September 2026 Emails, Notice, and Continuing Series**

46. On September 1, 2026, an email account identified as "JJ Case Work" communicated directly with Plaintiff Diana Natale concerning court transcripts, accusations, and Internet content about Plaintiff Diana Natale.

47. In September 1, 2026 email communications from the account identified as “JJ Case Work,” the sender stated that she had read Plaintiff Diana Natale’s court transcripts and then made additional accusations concerning Plaintiff Diana Natale. Those communications included statements concerning the disappearance of Jennifer Fay and accusations that Plaintiff Diana Natale had engaged in sexual activity with friends of Plaintiff Diana Natale’s sons who were allegedly teenagers. Plaintiff Diana Natale categorically denies these accusations.

**48.** On September 1, 2026, Plaintiff Diana Natale sent a written preservation demand concerning evidence and electronically stored information relevant to the continuing publications and communications concerning Plaintiff Diana Natale.

**49.** After receiving the preservation demand, communications from the “JJ Case Work” account continued concerning evidence, court-related material, and Internet content about Plaintiff Diana Natale, including communications challenging Plaintiff Diana Natale concerning what proof she possessed.

**50.** Plaintiff Diana Natale alleges that, during the September 1, 2026 communications, the “JJ Case Work” account stated that Plaintiff Diana Natale was a **“source of information”** for an upcoming podcast or series about Plaintiff Diana Natale and referred to the preparation of that new series.

**51.** Plaintiff Diana Natale alleges that the communications continued in the following days and included statements that the series about Plaintiff Diana Natale would continue and that Plaintiff Diana Natale could not stop it. On September 4, 2026, the “JJ Case Work” account stated, among

other things, **"I can talk about you on the internet until the day I die and there is NOTHING you can do about it,"** and **"I will continue to work on my series about you and there is nothing you can do about it, nothing, you can not stop me, you will not stop me."**

52. Plaintiff Diana Natale alleges that on September 4, 2026, the JJ Case Work account stated, in substance, that the speaker could talk about Plaintiff Diana Natale on the Internet indefinitely and would continue working on the series concerning Plaintiff Diana Natale.

**C. Unauthorized Ring Access, Private Electronic Material, and Personal Information**

53. Plaintiff Diana Natale alleges that the Ring material obtained, possessed, transmitted, displayed, and/or disseminated without her authorization included **numerous Ring video recordings associated with Plaintiff Diana Natale's residence.** These recordings included video depicting Plaintiff Diana Natale **inside her home**, as well as recordings depicting Plaintiff Diana Natale **leaving and returning to her home**. Plaintiff Diana Natale alleges that the numerous recordings revealed private activities and movements associated with her residence.

54. Plaintiff Diana Natale did not voluntarily provide Jennifer Jackson Prince with access to Plaintiff Diana Natale's Ring account, Ring cameras, account credentials, or private Ring recordings, and did not authorize Jennifer Jackson Prince to obtain or access those materials.

55. Plaintiff Diana Natale alleges that Ring-camera recordings originating from Plaintiff Diana Natale's account and residence have not merely appeared once. Plaintiff Diana Natale alleges that recordings have repeatedly been displayed, played, republished, discussed, or otherwise disseminated through YouTube videos, Reddit publications, and other Internet content directed at Plaintiff Diana Natale.

56. On September 1, 2026, the **"JJ Case Work"** account transmitted multiple Ring share links to Plaintiff Diana Natale in an email containing the statement **"EVIDENCE FOR FAKE COURT."**

Plaintiff Diana Natale alleges that this communication demonstrated possession of or access to multiple Ring recordings associated with Plaintiff Diana Natale's residence.

57. Plaintiff Diana Natale alleges that the repeated possession and publication of recordings originating from her Ring system, despite Plaintiff Diana Natale not having authorized Jennifer Jackson Prince's access, is evidence supporting Plaintiff Diana Natale's allegation of unauthorized electronic access. Plaintiff Diana Natale seeks discovery to determine precisely how access was accomplished, including account-access records, devices, IP/login records where available, shared-user information, linked accounts, communications concerning the recordings, creation and transmission of Ring share links, and communications between Jennifer Jackson Prince and any person who supplied or accessed the recordings.

58. Plaintiff Diana Natale does not presently claim to know whether the unauthorized access was accomplished through compromised credentials, an unauthorized logged-in device, misuse of shared-user or linked-account access, unauthorized creation or acquisition of share links, access by another person who supplied Jennifer Jackson Prince with the material, or another technical means. The precise mechanism is information Plaintiff Diana Natale seeks to establish through discovery.

58a. Plaintiff Diana Natale does not presently know the precise technical means by which Jennifer Jackson Prince allegedly obtained access to the Ring recordings and does not allege a technical method that has not yet been established.

59. Plaintiff Diana Natale further alleges that private communications and messages originating from or appearing on Plaintiff Diana Natale's cellular telephone have been obtained and subsequently displayed, discussed, reproduced, or disseminated in Internet publications concerning Plaintiff Diana Natale without her authorization.

60. Plaintiff Diana Natale did not authorize Jennifer Jackson Prince to access Plaintiff Diana Natale's cellular telephone, private accounts, private messages, or nonpublic electronic communications.

61. Plaintiff Diana Natale alleges that the appearance of her private communications online, together with the repeated appearance of Ring-camera material she did not provide to Jennifer Jackson Prince, forms part of the pattern of unauthorized electronic access that Plaintiff Diana Natale seeks to establish through discovery.

62. Plaintiff Diana Natale further alleges that Jennifer Jackson Prince published, displayed, disclosed, and/or disseminated personal and identifying information concerning Plaintiff Diana Natale to an Internet audience, including information capable of identifying, locating, or directly contacting Plaintiff Diana Natale. The information disclosed or discussed included information concerning Plaintiff Diana Natale's **residence and location in Westport, Massachusetts, the senior housing community in which she resides, her email address, photographs and information concerning her vehicles, information concerning her movements and activities associated with her residence, and other personal or contact information** that Plaintiff Diana Natale alleges was used to identify, locate, monitor, or contact her.

63. Plaintiff Diana Natale alleges that this disclosure was not limited to merely mentioning her name. Internet publications concerning Plaintiff Diana Natale displayed or discussed identifying and location-related information in conjunction with photographs, videos, Ring-camera material, litigation information, and other content concerning Plaintiff Diana Natale, thereby allowing viewers and participants to connect Plaintiff Diana Natale's identity with her residence, vehicles, movements, and means of contact.

64. Plaintiff Diana Natale further alleges that Jennifer Jackson Prince affirmatively encouraged or invited viewers or followers to contact Plaintiff Diana Natale while personal or contact information concerning Plaintiff Diana Natale was being made available to the Internet audience.

65. Plaintiff Diana Natale alleges that Jennifer Jackson Prince disclosed and disseminated Plaintiff Diana Natale's identifying, residence-related, and contact information in the context of an ongoing and increasingly hostile Internet campaign in which Plaintiff Diana Natale was accused of serious criminal and sexual misconduct, private Ring-camera recordings and other personal material were circulated, and participants and viewers made threatening and hostile statements concerning Plaintiff Diana Natale. Plaintiff Diana Natale alleges that placing information capable of identifying, locating, monitoring, or contacting her before an audience exposed to this hostile content materially increased Plaintiff Diana Natale's fear that Internet harassment and threats could result in unwanted contact or physical confrontation at or near her residence.

66. Plaintiff Diana Natale alleges that, during and following these publications, she received repeated and escalating unwanted, harassing, and threatening communications from third persons, including threats of physical violence, statements concerning **coming to or appearing at Plaintiff Diana Natale's residence**, firearm-related threats and imagery, and a threat to **slit Plaintiff Diana Natale's throat**. Plaintiff Diana Natale further alleges that Jennifer Jackson Prince repeatedly communicated her own intention to continue publishing accusations and Internet content concerning Plaintiff Diana Natale, including statements that she would continue the series, that Plaintiff Diana Natale could not stop her, and statements expressing an intention to expose Plaintiff Diana Natale for what Jennifer Jackson Prince described as the **"piece of shit"** she was and to make Plaintiff Diana Natale **"pay"** for what Jennifer Jackson Prince accused Plaintiff Diana Natale of having done. Plaintiff Diana Natale alleges that the combination of continuing publications,

**Plaintiff Diana Natale's throat**. Plaintiff Diana Natale further alleges that Jennifer Jackson Prince repeatedly communicated her own intention to continue publishing accusations and Internet content concerning Plaintiff Diana Natale, including statements that she would continue the series, that Plaintiff Diana Natale could not stop her, and statements expressing an intention to expose Plaintiff Diana Natale for what Jennifer Jackson Prince described as the **"piece of shit"** she was and to make Plaintiff Diana Natale **"pay"** for what Jennifer Jackson Prince accused Plaintiff Diana Natale of having done. Plaintiff Diana Natale alleges that the combination of continuing publications, disclosure of residence and identifying information, firearm-related content, threats of physical violence, and statements concerning appearing at her home caused Plaintiff Diana Natale to reasonably fear that the continuing online campaign could result in an in-person confrontation or physical harm.

67. Plaintiff Diana Natale will seek discovery concerning Jennifer Jackson Prince's communications with viewers, subscribers, Reddit participants, YouTube participants, other content creators, and persons who obtained, supplied, distributed, or used Plaintiff Diana Natale's private electronic material and personal information. Plaintiff Diana Natale further seeks discovery, to the extent permitted by law and available from relevant platforms, service providers, accounts, devices, and other sources, of **Internet Protocol ("IP") addresses, account-registration information, subscriber information, login and access records, account identifiers, communications, and other identifying records** necessary to determine the identities of persons using anonymous or pseudonymous Reddit, YouTube, and other Internet accounts who allegedly initiated, communicated, encouraged, or participated in threats, harassment, or threatening publications directed at Plaintiff Diana Natale. Plaintiff Diana Natale seeks such discovery to identify the persons responsible and to determine their communications,

relationships, and, where supported by the evidence, any coordination or participation with Jennifer Jackson Prince.

**D. Threatening and Firearm-Related Material**

68. Plaintiff Diana Natale alleges that she has preserved multiple videos, photographs, and Internet publications depicting Jennifer Jackson Prince possessing, handling, displaying, and firing firearms while making hostile and threatening statements directed toward Plaintiff Diana Natale. In one preserved video, Plaintiff Diana Natale alleges that Jennifer Jackson Prince is depicted firing a gun while stating, **"You don't want smoke, bitch."** Plaintiff Diana Natale further alleges that Jennifer Jackson Prince published firearm-related material in which **a photograph of Plaintiff Diana Natale was attached to an object at which Jennifer Jackson Prince was shooting**, thereby visually depicting Plaintiff Diana Natale in connection with the object being fired upon. Plaintiff Diana Natale also alleges that there are several separate firearm-related videos involving Jennifer Jackson Prince, including preserved material in which Jennifer Jackson Prince **wrote or displayed her own name on the palm of her hand**, which Plaintiff Diana Natale alleges served to identify Jennifer Jackson Prince in connection with the firearm content. Plaintiff Diana Natale alleges that these were not isolated or incidental firearm images, but part of a repeated course of threatening firearm-related content directed specifically toward Plaintiff Diana Natale.

69. Plaintiff Diana Natale alleges that her attribution of the firearm-related material to Jennifer Jackson Prince is based upon preserved evidence connecting Jennifer Jackson Prince to the videos, photographs, accounts, publications, and surrounding communications, and is not based merely upon an unidentified Internet account or a single image. Among the identifying evidence, Plaintiff Diana Natale alleges that preserved firearm-related material depicts Jennifer Jackson

Prince deliberately displaying **her own name written on the palm of her hand**, thereby providing identifying evidence within the material itself. Plaintiff Diana Natale further alleges that preserved evidence establishes Jennifer Jackson Prince's personal participation in, publication of, republication of, adoption of, and/or distribution of firearm-related content directed toward Plaintiff Diana Natale.

70. Plaintiff Diana Natale alleges that preserved material includes a firearm image accompanied by words to the effect, "I can do more than load em bitch."

71. Plaintiff Diana Natale alleges that the firearm-related material was published in the context of an ongoing hostile Internet campaign rather than in isolation.

72. Plaintiff Diana Natale alleges that other Internet participants also published threats, including statements concerning cutting Plaintiff Diana Natale's throat and directing Plaintiff Diana Natale to shoot herself.

73. Plaintiff Diana Natale alleges that the firearm-related acts, statements, videos, photographs, and threatening publications attributed to Jennifer Jackson Prince in the preceding paragraphs were **personally made, performed, displayed, published, and/or disseminated by Jennifer Jackson Prince**, as supported by Plaintiff Diana Natale's preserved evidence. These allegations include Jennifer Jackson Prince firing firearms while directing hostile statements toward Plaintiff Diana Natale, the firearm-related material depicting Plaintiff Diana Natale's photograph attached to an object being fired upon, and other preserved firearm videos and photographs identifying Jennifer Jackson Prince.

74. Separately, Plaintiff Diana Natale alleges that additional persons participating in or interacting with Internet content concerning Plaintiff Diana Natale made threats of physical violence against her. Plaintiff Diana Natale seeks discovery to identify those persons and

determine their communications and relationships with Jennifer Jackson Prince and whether Jennifer Jackson Prince encouraged, coordinated with, substantially assisted, republished, or otherwise participated in any such threatening conduct.

75. Plaintiff Diana Natale alleges that the combination of repeated firearm-related videos and imagery directed toward her, the use of her photograph in connection with an object being fired upon, threats of physical violence, publication of information concerning her residence and vehicles, and the continuing dissemination of serious accusations about her has caused Plaintiff Diana Natale to fear for her physical safety on a continuing basis. Plaintiff Diana Natale alleges that, because this material has been distributed to an Internet audience and repeatedly republished, she does not know who may have viewed or accepted the accusations or whether someone exposed to the publications may attempt to confront or harm her. As a result, Plaintiff Diana Natale alleges that she has become **constantly vigilant about her surroundings, watches who is near her and her residence, monitors her surroundings when leaving and returning home, and remains concerned about where she goes and what she does because she does not know whether an online participant or viewer may act upon the threatening and inflammatory material published about her.** Plaintiff Diana Natale alleges that this continuing fear has substantially interfered with her sense of personal security and her ability to conduct ordinary daily activities without fear of confrontation or physical harm.

**76.** Plaintiff Diana Natale alleges that the threatening and firearm-related conduct was especially alarming because it occurred while information concerning Plaintiff Diana Natale's **residence, vehicles, movements, contact information, and other identifying information** was being published or discussed online. Plaintiff Diana Natale alleges that the combination of threats and

information capable of identifying or locating her created a substantially greater safety concern than either type of publication considered in isolation.

77. Plaintiff Diana Natale alleges that the repeated publication of threatening firearm-related material, together with the dissemination of information capable of identifying or locating her, caused continuing **fear, anxiety, humiliation, emotional distress, loss of personal security, and disruption of her ordinary daily activities**. Plaintiff Diana Natale alleges that these effects have continued because the material remains capable of being viewed, copied, shared, republished, and circulated among Internet audiences.

78. Plaintiff Diana Natale has preserved substantial evidence concerning the threatening and firearm-related conduct alleged in this section, including **screenshots, photographs, videos, recordings, Internet publications, account information, URLs, and related communications**. The preserved evidence includes multiple items that Plaintiff Diana Natale alleges depict or identify Jennifer Jackson Prince personally participating in firearm-related conduct directed toward Plaintiff Diana Natale, including the specific conduct described in the preceding paragraphs.

79. Plaintiff Diana Natale seeks discovery concerning the **creation, recording, possession, publication, transmission, distribution, and republication** of the threatening and firearm-related material attributed to Jennifer Jackson Prince, including the original videos and photographs, associated accounts, upload and publication records, available metadata, communications concerning the creation or distribution of the material, persons to whom the material was sent or supplied, and records identifying accounts or persons who participated in its publication or republication.

**80.** Plaintiff Diana Natale further seeks discovery concerning communications between Jennifer Jackson Prince and persons who **received, shared, republished, discussed, encouraged, participated in, or otherwise assisted in disseminating** the firearm-related and threatening material, including communications concerning Plaintiff Diana Natale, her photograph, her residence, her vehicles, her location, or the creation and intended audience of the firearm-related publications. Plaintiff Diana Natale seeks such discovery to determine the full extent of the dissemination, the identities of persons involved, and whether the material was coordinated, encouraged, or intentionally circulated to additional Internet audiences.

**81.** Plaintiff Diana Natale alleges that the threatening and firearm-related conduct caused harm extending beyond the moment when any individual video, photograph, or statement was first published. Because the material was placed before Internet audiences, could be copied and redistributed, and appeared in connection with serious accusations and identifying information concerning Plaintiff Diana Natale, Plaintiff Diana Natale alleges that she continues to live with uncertainty concerning **who has seen the material, who possesses or has redistributed it, and whether a viewer or participant may attempt to locate, confront, threaten, or physically harm her.**

**82.** Plaintiff Diana Natale alleges that the firearm-related conduct, threats, dissemination of identifying and residence-related information, repeated hostile publications, and resulting fear for her physical safety form part of the **continuing and cumulative course of conduct** alleged in this Complaint. Plaintiff Diana Natale relies upon this conduct as factual support for the civil claims and requested relief set forth below, including the alleged invasion of privacy and intentional infliction of emotional distress, and for the need for appropriate narrowly tailored injunctive relief where authorized by law.

**82A.** Plaintiff Diana Natale further alleges that she has preserved evidence concerning the threats, firearm-related conduct, electronic activity, and other conduct described herein that may also be relevant to law-enforcement authorities. Plaintiff Diana Natale intends to provide such evidence to appropriate local, state, and/or federal law-enforcement and prosecutorial authorities, including the appropriate District Attorney, for independent investigation and for any criminal proceedings those authorities determine are warranted. Nothing in this civil Complaint is intended to limit Plaintiff Diana Natale's right to report the alleged conduct, provide preserved evidence, cooperate with law enforcement, or request investigation by the appropriate authorities.

**E. Plaintiff Diana Natale's Deceased Son Keith Natale, and Keith Natale's Gravesite**

**83.** Plaintiff Diana Natale alleges that online material concerning her deceased son, **Keith Natale**, was repeatedly used in publications directed at Plaintiff Diana Natale.

**84.** Plaintiff Diana Natale alleges that publications included photographs or imagery concerning **Keith Natale's gravesite** and statements asserting that Keith Natale hated Plaintiff Diana Natale, was glad to be away from Plaintiff Diana Natale, or died because of Plaintiff Diana Natale.

**85.** Plaintiff Diana Natale alleges that grotesque or manipulated images involving a casket, skeletons, rats, or similar imagery were published or circulated in connection with **Keith Natale, Keith Natale's death, and Keith Natale's gravesite**, and were directed toward Plaintiff Diana Natale.

**86.** Plaintiff Diana Natale alleges that publications concerning **Keith Natale** were used to ridicule, provoke, humiliate, and cause emotional distress to Plaintiff Diana Natale.

**87.** Plaintiff Diana Natale alleges that some publications used photographs of **Keith Natale** together with accusations or degrading statements concerning Plaintiff Diana Natale.

**88.** Plaintiff Diana Natale alleges that photographs and imagery concerning **Keith Natale's cemetery and gravesite** were incorporated into the continuing Internet campaign concerning Plaintiff Diana Natale.

**89.** Plaintiff Diana Natale does not allege physical desecration or physical damage to **Keith Natale's gravesite** unless and until evidence establishes such physical conduct.

**90.** Plaintiff Diana Natale alleges that the actionable conduct concerns the photographing, manipulation, publication, republication, and use of **Keith Natale's photographs, Keith Natale's gravesite, and death-related material concerning Keith Natale** in the alleged campaign.

**91.** Plaintiff Diana Natale alleges that the repeated use of **Keith Natale, the death of Keith Natale, and Keith Natale's gravesite** caused Plaintiff Diana Natale severe emotional distress beyond ordinary criticism or disagreement.

**92.** Plaintiff Diana Natale alleges that the publications concerning **Keith Natale and Keith Natale's gravesite** were repeated and circulated to Internet audiences in connection with other accusations against Plaintiff Diana Natale.

**93.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince is responsible for publications concerning **Keith Natale, Keith Natale's death, and Keith Natale's gravesite** to the extent the evidence establishes that Jennifer Jackson Prince personally created, published, republished, adopted, authorized, encouraged, or otherwise participated in those publications.

**94.** Plaintiff Diana Natale seeks discovery concerning the source, creation, alteration, publication, and republication of photographs, images, videos, and statements concerning **Keith Natale, Keith Natale's death, and Keith Natale's gravesite**.

**95.** Plaintiff Diana Natale alleges that the publications concerning **Keith Natale, Keith Natale's death, and Keith Natale's gravesite** are relevant to intent, outrageousness, emotional distress, damages, and the continuing nature of the alleged conduct.

**96.** Plaintiff Diana Natale alleges that the publications involving **Keith Natale and Keith Natale's gravesite** occurred in the same broader course of Internet activity that included serious criminal accusations, personal information, private electronic material, and threats.

**97.** Plaintiff Diana Natale alleges that the cumulative and repeated use of **Keith Natale, photographs of Keith Natale, the death of Keith Natale, and Keith Natale's gravesite** was intended or reasonably likely to intensify the distress caused to Plaintiff Diana Natale by the continuing publications.

**F. Court Audio and Litigation Material**

98. Plaintiff Diana Natale alleges that Jennifer Jackson Prince obtained, played, published, or participated in the publication of audio or recordings relating to Massachusetts court proceedings.

99. Plaintiff Diana Natale specifically alleges publication of audio concerning a September 3, 2026 Housing Court proceeding in which the court found no contempt.

100. Plaintiff Diana Natale alleges that the published court-related audio included voices of court participants, including the judge, witnesses, Plaintiff Diana Natale, and counsel.

101. Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly displayed, read aloud, discussed, copied, published, and/or republished Plaintiff Diana Natale's litigation documents, court filings, court-related materials, and information obtained from those materials through **Reddit publications and YouTube videos and livestreams created, made, published, and/or participated in by Jennifer Jackson Prince** concerning Plaintiff Diana Natale. Plaintiff Diana

Natale further alleges that Jennifer Jackson Prince used those Reddit and YouTube publications to present and discuss Plaintiff Diana Natale's pending court proceedings before Internet audiences and incorporated the court-related material into the continuing online series concerning Plaintiff Diana Natale.

102. Plaintiff Diana Natale alleges that Jennifer Jackson Prince incorporated court documents, litigation materials, and court-related audio into Internet publications concerning Plaintiff Diana Natale and discussed Plaintiff Diana Natale's pending legal matters. Those materials concerned Plaintiff Diana Natale's Bristol Superior Court litigation involving Barstool Sports, Inc., Kirk Minihane and others, as well as Plaintiff Diana Natale's Massachusetts Housing Court proceedings concerning the residence where she has lived for approximately eight years.

102A. Plaintiff Diana Natale alleges, based upon evidence in her possession, including preserved correspondence and publications, that materials and recordings subsequently possessed, displayed, published, and/or distributed by Jennifer Jackson Prince were transmitted or supplied to her by Kirk Minihane and/or persons associated with him. Plaintiff Diana Natale further alleges that evidence concerning Jennifer Jackson Prince's conduct, including documents and photographs, was provided to the management office at Plaintiff Diana Natale's residence. Plaintiff Diana Natale possesses and intends to produce through discovery preserved documents, correspondence, photographs, recordings, and publications supporting these allegations.

103. Plaintiff Diana Natale alleges that Jennifer Jackson Prince located, obtained, displayed, read aloud, discussed, and/or published portions of Plaintiff Diana Natale's court records and legal filings through YouTube, Reddit, livestreams, and other Internet publications concerning Plaintiff Diana Natale.

104. Plaintiff Diana Natale alleges that Jennifer Jackson Prince obtained and possessed audio from Plaintiff Diana Natale's Massachusetts court proceedings and subsequently played, published, and/or disseminated that court audio to Internet audiences. The precise source and manner by which Jennifer Jackson Prince obtained the court audio are matters within the knowledge of Jennifer Jackson Prince and other persons involved and are subjects for discovery in this action.

105. Plaintiff Diana Natale seeks discovery concerning the source, acquisition, possession, transmission, publication, and republication of the court audio, including how Jennifer Jackson Prince obtained the audio, from whom it was obtained, whether it originated from an official court recording or another recording, and what authorization, restrictions, or conditions applied to its acquisition or use.

105A. Plaintiff Diana Natale alleges that Massachusetts Supreme Judicial Court Rule 1:19 governs electronic access to Massachusetts court proceedings and provides that no person may make a recording or electronic transmission in a courtroom or hearing room without prior authorization from the judge or magistrate having immediate supervision over that place. Plaintiff Diana Natale alleges that the September 3, 2026 Housing Court audio subsequently obtained and published by Jennifer Jackson Prince contained the actual voices of the presiding judge, Plaintiff Diana Natale, witnesses, and counsel. Plaintiff Diana Natale seeks discovery to determine the source of that recording, the manner in which it was made or obtained, whether the recording or transmission was authorized under Rule 1:19, and what authorization or restrictions, if any, governed its subsequent acquisition, distribution, or publication.

**106.** Plaintiff Diana Natale further seeks discovery concerning communications, electronic records, files, messages, transmissions, and other evidence showing **who supplied court recordings or litigation materials to Jennifer Jackson Prince, to whom Jennifer Jackson Prince transmitted or supplied those materials, and the persons involved in their subsequent publication or republication.**

**107.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's publication and use of Plaintiff Diana Natale's court-related materials and court audio were **not isolated events**, but formed part of the continuing YouTube, Reddit, livestream, podcast, and Internet series concerning Plaintiff Diana Natale.

**108.** Plaintiff Diana Natale alleges that court audio, court documents, and litigation materials concerning Plaintiff Diana Natale were distributed and discussed among Internet participants and audiences together with other recordings, photographs, accusations, and personal information concerning Plaintiff Diana Natale.

**109.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's possession, use, publication, and republication of court-related materials are relevant to **Jennifer Jackson Prince's knowledge of Plaintiff Diana Natale's pending legal proceedings, the sources from whom Jennifer Jackson Prince obtained information, the scope and continuation of the Internet campaign, and the dissemination of materials concerning Plaintiff Diana Natale.**

**110.** Plaintiff Diana Natale's claims are **not based merely upon Jennifer Jackson Prince discussing the existence of publicly accessible court records.** Plaintiff Diana Natale's claims concern the broader conduct alleged in this Complaint, including the alleged acquisition, possession, publication and dissemination of court audio, the use of litigation materials together

with allegedly false factual accusations and other challenged content, and the continuing course of conduct alleged herein.

**111.** Plaintiff Diana Natale alleges that, to the extent discovery establishes that any nonpublic communication, electronic communication, recording, or other protected material was unlawfully intercepted, accessed, obtained, disclosed, or used, Plaintiff Diana Natale seeks all civil relief authorized by the applicable federal and Massachusetts statutes pleaded in this Complaint.

**112.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's repeated use and publication of Plaintiff Diana Natale's litigation materials and court-related information enabled Internet audiences to follow Plaintiff Diana Natale's pending legal proceedings and **connected those proceedings to the continuing YouTube, Reddit, livestream, podcast, and other Internet content directed at Plaintiff Diana Natale.**

**G. Residence, Vehicles, Doxing-Type Dissemination, and Electronic Targeting**

**113.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly published and disseminated Plaintiff Diana Natale's personal, identifying, contact, residence-related, and location-related information through **YouTube videos and livestreams, Reddit publications, and other Internet content created, published, republished, and/or disseminated by Jennifer Jackson Prince.**

**114.** Plaintiff Diana Natale alleges that the information published or disseminated by Jennifer Jackson Prince included **Plaintiff Diana Natale's residential address and location in Westport, Massachusetts, personal telephone number, personal email address, photographs and images of Plaintiff Diana Natale's residence, photographs and identifying information concerning vehicles driven by or associated with Plaintiff Diana Natale, and information concerning Plaintiff Diana Natale's movements and activities.**

**115.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince did not merely publish photographs in which Plaintiff Diana Natale's vehicles happened to appear incidentally, but **used photographs and identifying information concerning the vehicles as part of Internet content concerning Plaintiff Diana Natale.**

**116.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince specifically identified vehicles driven by or associated with Plaintiff Diana Natale to other persons and **told, instructed, encouraged, and/or invited persons to watch for, recognize, or report sightings of those vehicles.**

**117.** Plaintiff Diana Natale alleges that the dissemination of her residence, location, vehicle, and identifying information enabled Internet viewers and other persons to **identify, recognize, locate, monitor, watch for, follow, or report the movements of Plaintiff Diana Natale and the vehicles she drives.**

**118.** Plaintiff Diana Natale did not consent to Jennifer Jackson Prince publishing or disseminating Plaintiff Diana Natale's nonpublic personal, contact, residence, location, or vehicle-identifying information or using such information to enable Internet viewers or other persons to identify, locate, monitor, contact, or watch for Plaintiff Diana Natale.

**119.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince published and disseminated this identifying and location-related information **during the same continuing Internet campaign in which Jennifer Jackson Prince published firearm-related videos and imagery, hostile and threatening material, serious accusations concerning Plaintiff Diana Natale, and other content described throughout this Complaint.**

**120.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's dissemination of identifying and location-related information also occurred in connection with publications concerning

**Plaintiff Diana Natale's residence, vehicles, movements and activities, private electronic material, Ring-camera recordings, and continuing YouTube and Reddit content concerning Plaintiff Diana Natale.**

**121.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's publication of information identifying Plaintiff Diana Natale's residence, location, and vehicles caused Plaintiff Diana Natale to fear that persons viewing the Internet publications could **locate her residence, recognize her vehicles, determine when she was leaving or returning home, monitor her movements, or confront her in person.**

**122.** Plaintiff Diana Natale alleges that publication of her personal, residential, location, vehicle, and contact information, particularly when combined with the firearm-related and threatening material alleged in this Complaint, **substantially increased Plaintiff Diana Natale's fear of unwanted contact, confrontation, stalking, harassment, or physical harm by persons exposed to the Internet publications.**

**123.** Plaintiff Diana Natale alleges that during the continuing Internet campaign she received **repeated unwanted, harassing, and threatening communications, including threats of physical violence**, and that the simultaneous dissemination of information capable of identifying or locating Plaintiff Diana Natale caused her to fear that online threats and hostility could result in an in-person confrontation or physical attack.

**124.** Plaintiff Diana Natale uses the term **"doxing"** descriptively in this Complaint to refer to the alleged publication and dissemination of Plaintiff Diana Natale's personal, identifying, contact, residential, location, and vehicle information **in the context of the hostile and threatening Internet campaign alleged herein.**

**125.** Plaintiff Diana Natale alleges that the dissemination of her personal, identifying, residential, location, vehicle, telephone, and email information forms part of the continuing course of conduct supporting Plaintiff Diana Natale's claims for invasion of privacy, intentional infliction of emotional distress, damages, and appropriate equitable relief.

**126.** Plaintiff Diana Natale alleges that the dissemination and use of identifying information occurred together with the other conduct alleged in this Complaint, including threats, firearm-related material, publication of residence and vehicle information, dissemination of private electronic material, and repeated Internet publications concerning Plaintiff Diana Natale. Plaintiff Diana Natale alleges that these circumstances are relevant to the nature, purpose, effect, and harmful consequences of the dissemination.

**127.** Plaintiff Diana Natale alleges that the publication and dissemination of information capable of identifying, locating, contacting, monitoring, or recognizing Plaintiff Diana Natale **materially increased the danger and emotional impact of the threatening and hostile conduct alleged in this Complaint because persons exposed to that content were also provided information capable of locating or recognizing Plaintiff Diana Natale.**

**128.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's dissemination of Plaintiff Diana Natale's identifying, residence-related, location, vehicle, and contact information is relevant to **Plaintiff Diana Natale's invasion-of-privacy claim, intentional-infliction-of-emotional-distress claim, damages, and request for narrowly tailored declaratory and equitable relief.**

**129.** Plaintiff Diana Natale seeks discovery concerning **how Jennifer Jackson Prince obtained Plaintiff Diana Natale's residence, vehicle, telephone, email, location, and other personal information; the persons who supplied such information to Jennifer Jackson Prince; the**

**communications through which it was obtained; and the persons, accounts, platforms, and audiences to whom Jennifer Jackson Prince subsequently supplied, transmitted, published, or republished that information.**

**130.** Plaintiff Diana Natale further seeks discovery concerning communications and records showing whether Jennifer Jackson Prince **directed, encouraged, requested, or communicated with other persons concerning contacting Plaintiff Diana Natale, watching for Plaintiff Diana Natale or her vehicles, identifying or locating Plaintiff Diana Natale, monitoring her movements, photographing her residence or vehicles, or reporting information concerning Plaintiff Diana Natale's whereabouts or activities.**

**131.** Plaintiff Diana Natale alleges that the publication and dissemination of her residence, location, vehicle, contact, and identifying information were **repeated acts occurring as part of the continuing Internet campaign alleged in this Complaint and were not an isolated or accidental disclosure.**

**132.** Plaintiff Diana Natale alleges that the combination of **Jennifer Jackson Prince's dissemination of information capable of identifying or locating Plaintiff Diana Natale, the firearm-related and threatening material described herein, the publication of private electronic material, and the continuing hostile Internet publications caused Plaintiff Diana Natale substantial fear for her physical safety, loss of privacy and personal security, emotional distress, and disruption of her ordinary daily life.**

**H. Cyberstalking, Electronic Targeting, and Continuing Internet Campaign**

**133.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince engaged in a continuing course of Internet and electronic conduct directed specifically at Plaintiff Diana Natale, including repeated monitoring, collection, publication, republication, dissemination, and use of

information, images, recordings, communications, litigation materials, and other content concerning Plaintiff Diana Natale. Plaintiff Diana Natale refers to this continuing course of conduct descriptively as **"cyberstalking" and "electronic targeting."**

**134.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly monitored, collected, copied, cropped, altered, removed context from, displayed, discussed, published, and republished material concerning Plaintiff Diana Natale and used that material to create and continue Internet content directed at Plaintiff Diana Natale.

**135.** Plaintiff Diana Natale alleges that the material included **social-media content, court and litigation materials, photographs and images, personal and identifying information, residence and vehicle information, private electronic content, Ring-camera recordings, court-related audio, other recordings, and communications concerning Plaintiff Diana Natale.**

**136.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince used **YouTube videos and livestreams, Reddit publications, podcasts, email communications, and related Internet platforms** to publish, republish, distribute, promote, and continue the Internet campaign concerning Plaintiff Diana Natale.

**137.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's continuing electronic course of conduct included the **firearm-related videos, photographs, statements, hostile publications, and threatening material personally attributed to Jennifer Jackson Prince and described elsewhere in this Complaint**, together with other threats and threatening communications received by Plaintiff Diana Natale during the continuing Internet campaign.

**138.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's course of conduct included **identifying vehicles driven by or associated with Plaintiff Diana Natale and encouraging,**

**instructing, and/or inviting other persons to recognize, watch for, locate, or report sightings or movements of Plaintiff Diana Natale and those vehicles.**

**139.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's course of conduct included the repeated use and publication of photographs, images, statements, and degrading death-related material concerning **Plaintiff Diana Natale's deceased son, Keith Natale, and Keith Natale's gravesite**, including the specific publications concerning Keith Natale alleged above.

**140.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's continuing course of conduct also included **age-focused ridicule and the publication and dissemination of Plaintiff Diana Natale's personal, residential, location, contact, and identifying information**, in conjunction with other hostile Internet content concerning Plaintiff Diana Natale.

**141.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly published and republished material concerning Plaintiff Diana Natale in a manner **intended to provoke, intimidate, frighten, humiliate, harass, and cause emotional distress to Plaintiff Diana Natale and to maintain and expand an Internet audience for the continuing series concerning Plaintiff Diana Natale.**

### I. September 25-26, 2026 Livestream and Representative Statements

**142.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince created, published, participated in, and/or promoted a **continuing Internet series specifically concerning Plaintiff Diana Natale**, rather than a single isolated publication.

**143.** Plaintiff Diana Natale alleges that promotional material for the continuing series announced **"NEW EPISODE EVERY FRIDAY!"**, representing to Internet viewers that additional content concerning Plaintiff Diana Natale would be published on a recurring basis.

**144.** Plaintiff Diana Natale alleges that the recurring nature and promotion of the series encouraged Internet audiences to return for additional videos, livestreams, publications, accusations, commentary, photographs, recordings, and other content concerning Plaintiff Diana Natale.

**145.** Plaintiff Diana Natale alleges that repeated publication and republication expanded the Internet audience exposed to the accusations, personal information, private electronic material, photographs, recordings, and other content concerning Plaintiff Diana Natale and increased the continuing harm caused by their dissemination.

**146.** Plaintiff Diana Natale alleges that material concerning her was **copied, replayed, displayed, discussed, transmitted, republished, and redistributed through YouTube, Reddit, podcasts, livestreams, and other Internet venues**, allowing material concerning Plaintiff Diana Natale to circulate beyond the audience of any single original publication.

**147.** Plaintiff Diana Natale alleges that the continued publication, republication, and cross-platform dissemination of material concerning her caused the alleged harm to continue and recur beyond the date on which any particular photograph, video, recording, statement, or other publication first appeared.

**148.** Plaintiff Diana Natale alleges that the continuing electronic targeting and recurring Internet series caused **continuing fear for her physical safety, humiliation, severe emotional distress, loss of privacy and personal security, and disruption of her ordinary daily life**, including continuing concern that persons exposed to the publications, threats, firearm-related material, and identifying information could locate, confront, or physically harm Plaintiff Diana Natale.

**149.** Plaintiff Diana Natale alleges that the continuing and cumulative course of electronic conduct described in this section forms part of the factual basis supporting **Plaintiff Diana**

**Natale's civil claims for defamation, invasion of privacy, intentional infliction of emotional distress, unauthorized electronic access and disclosure where established by the evidence, and the other civil claims and relief pleaded below.**

**150.** Plaintiff Diana Natale alleges that the repeated and continuing nature of Jennifer Jackson Prince's Internet and electronic conduct is relevant to **Jennifer Jackson Prince's knowledge, intent, the continuity and scope of the alleged conduct, causation, emotional distress, damages, and Plaintiff Diana Natale's request for appropriate narrowly tailored equitable relief.**

**151.** Plaintiff Diana Natale alleges that the continuing course of conduct must be considered **cumulatively and in context**, including Jennifer Jackson Prince's alleged false factual accusations, firearm-related material, publication of Plaintiff Diana Natale's identifying and residence-related information, dissemination of private electronic material, use of material concerning Keith Natale and Keith Natale's gravesite, court-related material and audio, and the recurring Internet series concerning Plaintiff Diana Natale.

**152.** Plaintiff Diana Natale alleges that the conduct described in this section is relevant to the **intent, outrageousness, causation, damages, invasion of privacy, emotional distress, continuing nature of the alleged harm, and need for appropriate equitable relief** alleged throughout this Complaint.

**153.** Plaintiff Diana Natale preserved a lengthy YouTube livestream titled **"Diana Series: Episode: The Tenant from Hell,"** streamed on or about September 25–26, 2026, as part of the continuing Internet series concerning Plaintiff Diana Natale.

**154.** Plaintiff Diana Natale alleges that the livestream was devoted extensively to Plaintiff Diana Natale and discussed **Plaintiff Diana Natale's Massachusetts residence and housing**

**circumstances, pending civil litigation and Housing Court proceedings, personal history, family members, and serious accusations of criminal and sexual misconduct against Plaintiff Diana Natale**, including accusations described elsewhere in this Complaint that Plaintiff Diana Natale categorically denies.

**155.** Plaintiff Diana Natale alleges that the livestream identified Plaintiff Diana Natale and discussed **the location, nature, and physical layout of the Massachusetts senior housing community and residence where Plaintiff Diana Natale lives**, thereby providing an Internet audience with additional information concerning Plaintiff Diana Natale's residence and location.

**156.** Plaintiff Diana Natale alleges that the livestream discussed **Plaintiff Diana Natale's receipt of government-assisted elderly housing and her personal financial circumstances**, using information concerning Plaintiff Diana Natale's housing and financial circumstances as content in the continuing Internet series concerning Plaintiff Diana Natale.

**157.** Plaintiff Diana Natale alleges that the livestream discussed **Plaintiff Diana Natale's deceased son, Keith Natale, and Keith Natale's death**, and used Keith Natale and his death as material in the continuing Internet content concerning Plaintiff Diana Natale. Plaintiff Diana Natale alleges that this occurred as part of the broader pattern described above in which **Keith Natale, photographs of Keith Natale, Keith Natale's death, and Keith Natale's gravesite** were repeatedly used to ridicule, provoke, humiliate, and inflict emotional distress upon Plaintiff Diana Natale.

**158.** Plaintiff Diana Natale alleges that the livestream referred to purported news articles and repeated the extraordinarily serious accusation that Plaintiff Diana Natale had chained a person in a basement and subjected that person to abuse and other horrific acts. Plaintiff Diana Natale categorically denies this accusation.

**159.** Plaintiff Diana Natale alleges that the livestream displayed, read, and/or discussed Plaintiff Diana Natale's court filings and litigation materials and informed Internet viewers that additional court materials concerning Plaintiff Diana Natale could be located through Massachusetts court records.

**160.** Plaintiff Diana Natale alleges that during the livestream Jennifer Jackson Prince publicly disclosed and discussed the specific dollar amount of Plaintiff Diana Natale's monthly Social Security income and other personal financial information concerning Plaintiff Diana Natale. Jennifer Jackson Prince further referred to Plaintiff Diana Natale as a **"broke bitch."** Plaintiff Diana Natale alleges that Jennifer Jackson Prince used Plaintiff Diana Natale's financial circumstances and Social Security income as material to ridicule, demean, and humiliate Plaintiff Diana Natale before the Internet audience as part of the continuing series concerning her.

**161.** Plaintiff Diana Natale alleges that during the livestream a participant expressly acknowledged deliberately using Plaintiff Diana Natale's Facebook material to provoke her, stating, **"would purposely clip her Facebook post just to piss her off. Just to make her mad."** Plaintiff Diana Natale alleges that this statement is evidence of the deliberate effort to provoke and cause emotional distress to Plaintiff Diana Natale.

**162.** Plaintiff Diana Natale alleges that the livestream repeated serious accusations that Plaintiff Diana Natale engaged in sexual activity with friends of her son and with neighborhood boys, including persons alleged to have been under eighteen years of age. Plaintiff Diana Natale categorically and unequivocally denies these accusations.

**163.** Plaintiff Diana Natale alleges that the livestream did not present the accusations described in ¶162 merely as speculation, but represented to Internet viewers that **"We have proof. We do**

**have proof that that's true,"** and stated that a YouTube video would be played as purported proof of the accusation.

**164.** Plaintiff Diana Natale alleges that the livestream characterized the alleged conduct as **"pedophile behavior,"** thereby presenting the accusations of sexual misconduct involving minors to the Internet audience in an especially inflammatory and damaging manner.

**165.** Plaintiff Diana Natale alleges that the livestream accused Plaintiff Diana Natale and members of the Natale family of having something to do with the disappearance of Jennifer Fay. Plaintiff Diana Natale categorically denies having caused, participated in, assisted with, or possessed knowledge of any wrongdoing concerning the disappearance of Jennifer Fay.

**166.** Plaintiff Diana Natale alleges that the livestream expressly asserted that Plaintiff Diana Natale knew what happened to Jennifer Fay, an accusation Plaintiff Diana Natale categorically denies.

**167.** Plaintiff Diana Natale alleges that the livestream attempted to give the accusations concerning Jennifer Fay an appearance of official or investigative support by referring to Plaintiff Diana Natale and others as suspects and invoking purported information from police, detectives, and private investigators in connection with those accusations.

**168.** Plaintiff Diana Natale alleges that the livestream expressly discussed **"rage baiting"** Plaintiff Diana Natale into responding or "telling on" herself, which Plaintiff Diana Natale alleges is evidence that provoking Plaintiff Diana Natale and eliciting reactions from her were intentional components of the continuing Internet content.

**169.** Plaintiff Diana Natale alleges that during the livestream a participant proposed directly contacting Plaintiff Diana Natale through Facebook while the livestream was occurring.

**170.** Plaintiff Diana Natale alleges that another participant immediately warned that contacting Plaintiff Diana Natale in that manner would constitute harassment, but the participant proposing the contact responded, **"Well, well, I am anyway. I don't give a [__]."** Plaintiff Diana Natale alleges that this exchange demonstrates awareness during the livestream that the proposed direct contact with Plaintiff Diana Natale was regarded as harassment and an expressed intention to proceed nevertheless.

**171.** Plaintiff Diana Natale alleges that the September 25–26, 2026 livestream demonstrates the continuing, interactive, audience-directed, and deliberately provocative nature of the Internet series concerning Plaintiff Diana Natale, including the presentation of serious accusations, discussion of Plaintiff Diana Natale's private and financial circumstances, use of her litigation materials, encouragement of audience participation, and discussion of directly contacting Plaintiff Diana Natale.

**172.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince personally participated in, made, published, republished, adopted, encouraged, and/or disseminated statements and conduct described in this livestream section to the extent established by Plaintiff Diana Natale's preserved recording, transcript, account evidence, and other evidence. Plaintiff Diana Natale seeks discovery concerning Jennifer Jackson Prince's role in creating, participating in, publishing, promoting, distributing, and preserving the livestream and the identities and roles of the other participants appearing or speaking during it.

**J. Harassment, Threats, and Abuse Directed at an Older Adult**

**173.** Plaintiff Diana Natale is over sixty years of age and is an older adult within the meaning of Massachusetts law, including G.L. c. 19A, § 14.

**174.** Massachusetts law recognizes serious physical and emotional injury to an older adult within its statutory framework concerning abuse of older adults. Plaintiff Diana Natale alleges that Jennifer Jackson Prince knew that Plaintiff Diana Natale was an older adult and nevertheless knowingly continued the repeated and targeted course of conduct alleged throughout this Complaint.

**175.** Plaintiff Diana Natale alleges that the continuing conduct directed toward her included repeated electronic targeting; threats and threatening material; firearm-related videos, photographs, and statements; dissemination of Plaintiff Diana Natale's residence, location, vehicle, contact, and identifying information; publication of material concerning her home and movements; alleged unauthorized acquisition, possession, and dissemination of private electronic material and Ring-camera recordings; and the repeated use and exploitation of **Plaintiff Diana Natale's deceased son, Keith Natale, Keith Natale's death, photographs of Keith Natale, and Keith Natale's gravesite.**

**176.** Plaintiff Diana Natale alleges that the continuing and cumulative course of conduct caused **serious and continuing emotional injury, fear for her physical safety, intimidation, humiliation, loss of privacy and personal security, and substantial disruption of her ordinary daily life.**

**177.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's knowledge of Plaintiff Diana Natale's age, combined with the continuing nature and severity of the alleged conduct, is relevant to **knowledge, intent, outrageousness, causation, the severity of Plaintiff Diana Natale's emotional distress, damages, and the need for appropriate equitable relief.**

**178.** Plaintiff Diana Natale alleges that the conduct directed toward her should be considered in its full factual context, including **her status as an older adult, Jennifer Jackson Prince's**

**alleged knowledge of that status, the repeated age-focused ridicule described below, and the alleged conduct affecting Plaintiff Diana Natale's personal safety, privacy, residence, and emotional well-being.**

**179.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly referenced Plaintiff Diana Natale's age and subjected Plaintiff Diana Natale to **age-focused ridicule and degrading language, including referring to Plaintiff Diana Natale as an "old hag."**

**180.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's repeated age-focused ridicule is relevant to the **targeted and personal nature of the continuing conduct, Jennifer Jackson Prince's intent, the manner in which Plaintiff Diana Natale was publicly humiliated and demeaned, and the emotional distress caused by the alleged conduct.**

**181.** Massachusetts G.L. c. 258E, § 1 establishes a statutory framework concerning harassment, including specified repeated acts directed at a particular person that cause fear, intimidation, abuse, or damage to property. Plaintiff Diana Natale alleges that the repeated and targeted conduct described throughout this Complaint is relevant to the harassment and safety context in which Jennifer Jackson Prince's alleged conduct occurred.

**182.** Plaintiff Diana Natale alleges that the repeated Internet publications, unwanted communications, threats and threatening material, firearm-related content, electronic targeting, dissemination of identifying and location-related information, and continuing Internet series concerning Plaintiff Diana Natale demonstrate a **continuing pattern of conduct rather than a single isolated incident.**

**183.** Plaintiff Diana Natale alleges that the continuing pattern described above is relevant to **the reasonableness and severity of Plaintiff Diana Natale's fear, the cumulative emotional harm caused by the alleged conduct, Jennifer Jackson Prince's knowledge and intent, and**

**Plaintiff Diana Natale's request for appropriate protective and equitable relief available in this civil action.**

**184.** Massachusetts G.L. c. 258E, § 3 provides a statutory mechanism for protective relief in qualifying harassment matters and expressly recognizes that the chapter does not preclude other civil or criminal remedies available under law.

**185.** Plaintiff Diana Natale alleges that the harassment-related statutory framework provides relevant context for evaluating the **repeated, targeted, and continuing nature of the conduct alleged in this Complaint and Plaintiff Diana Natale's need for legally available, appropriately tailored relief to protect her privacy and personal safety.**

**186.** Plaintiff Diana Natale seeks all damages, declaratory relief, equitable relief, and other remedies legally available under the independent civil causes of action pleaded in this Complaint, including appropriately tailored relief necessary to address continuing harm to Plaintiff Diana Natale's privacy, security, and personal safety.

**187.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's knowledge of Plaintiff Diana Natale's age, together with the repeated age-focused ridicule directed toward Plaintiff Diana Natale, is relevant to the targeted nature of the alleged conduct and to the severity of the resulting humiliation, fear, and emotional injury.

**188.** Plaintiff Diana Natale alleges that the continuing and recurring nature of the publications substantially increased their emotional impact because new, repeated, and repackaged material concerning Plaintiff Diana Natale was repeatedly returned to Internet audiences through videos, livestreams, Reddit publications, podcasts, and related online content.

**189.** Plaintiff Diana Natale alleges that the targeting of **her residence and location, vehicles, movements, contact and identifying information, private electronic material, family, and**

**her deceased son Keith Natale and Keith Natale's gravesite** compounded the fear, humiliation, invasion of privacy, and emotional injury caused by the continuing publications.

**190.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince received **repeated and direct notice** that Plaintiff Diana Natale disputed and denied the serious accusations being published about her, objected to the continuing publications and dissemination of her information, and considered the continuing conduct harmful and threatening.

**191.** Plaintiff Diana Natale alleges that **despite receiving such notice, Jennifer Jackson Prince continued the Internet series and continued publishing, republishing, participating in, promoting, and/or disseminating additional content concerning Plaintiff Diana Natale.** Plaintiff Diana Natale alleges that the continuation of the conduct after notice is relevant to Jennifer Jackson Prince's knowledge, intent, and applicable standards of fault.

**192.** Plaintiff Diana Natale alleges that the older-adult, age-focused, harassment, threatening, and continuing-course allegations set forth above form part of the **cumulative factual circumstances underlying Plaintiff Diana Natale's independent civil causes of action and her claims for damages and appropriately tailored equitable relief.**

**K. Notice, Preservation Demands, and Evidence**

**193.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince received repeated and direct notice that Plaintiff Diana Natale disputed and categorically denied the accusations being published concerning her and demanded the preservation of evidence relevant to the continuing publications and alleged conduct.

**194.** Plaintiff Diana Natale alleges that her preservation demands included requests for preservation of **devices, computers, cellular telephones, accounts, emails, messages, communications, metadata, recordings, videos, photographs, electronically stored**

**information, social-media content, account information, and other electronic evidence** relevant to the matters alleged in this Complaint.

**195.** Plaintiff Diana Natale alleges that on September 5, 2026, after receiving preservation-related communications, the **JJ Case Work email account used to communicate with Plaintiff Diana Natale stated: "YOU ARE NOT GETTING ANYTHING FROM MY DEVICES!!"**

**196.** Plaintiff Diana Natale alleges that the same communication further stated that Plaintiff Diana Natale **"will not get any records or metadata from me!"** Plaintiff Diana Natale alleges that these statements were made in direct response to communications concerning evidence and electronically stored information.

**197.** Plaintiff Diana Natale alleges that the statements described in ¶¶195–196 are relevant to **Jennifer Jackson Prince's notice and knowledge of requests concerning electronically stored evidence, her possession or control of potentially relevant devices and electronic information, and the need for discovery and preservation of that evidence.** Plaintiff Diana Natale does not rely upon those statements alone as proof that evidence was destroyed or altered.

**198.** Plaintiff Diana Natale alleges that she preserved emails and electronic communications from **September 1 through September 5, 2026**, including communications concerning the continuing Internet series, accusations concerning Plaintiff Diana Natale, court and litigation materials, Ring-camera links, evidence-preservation demands, electronic devices, records, and metadata.

**199.** Plaintiff Diana Natale alleges that she has preserved **videos, screenshots, screen recordings, Internet posts, URLs, emails, photographs, account information, and audiovisual recordings** concerning Jennifer Jackson Prince's alleged continuing publications and conduct directed toward Plaintiff Diana Natale.

**200.** Plaintiff Diana Natale alleges that she preserved evidence concerning the **September 25–26, 2026 YouTube livestream titled "Diana Series: Episode: The Tenant from Hell,"** including audiovisual material and transcript evidence, as well as evidence concerning other Internet publications directed toward Plaintiff Diana Natale.

**201.** Plaintiff Diana Natale alleges that she preserved evidence concerning **firearm-related videos, photographs, statements, and threatening material personally attributed to Jennifer Jackson Prince**, as well as separately preserved evidence of additional threats made by other persons or Internet accounts during the continuing course of conduct alleged herein.

**202.** Plaintiff Diana Natale alleges that she preserved evidence concerning publications involving **her deceased son, Keith Natale, including photographs of Keith Natale, statements and accusations concerning Keith Natale and his death, photographs and imagery concerning Keith Natale's gravesite, and manipulated or degrading death- and gravesite-related material.**

**203.** Plaintiff Diana Natale alleges that she preserved evidence concerning **multiple Ring-camera share links transmitted through the JJ Case Work email account on September 1, 2026**, together with the accompanying communication referring to the links as **"EVIDENCE FOR FAKE COURT."** Plaintiff Diana Natale alleges that the preserved Ring-related evidence is relevant to determining the source, acquisition, access, possession, transmission, and dissemination of private recordings originating from Plaintiff Diana Natale's Ring system.

**204.** Plaintiff Diana Natale alleges that she preserved evidence concerning the publication and dissemination of **her personal, identifying, contact, residential, location, and vehicle information**, including material concerning her residence and movements, as well as evidence

concerning statements directing, encouraging, and/or inviting Internet viewers to identify, watch for, locate, report sightings of, and/or contact Plaintiff Diana Natale.

**205.** Plaintiff Diana Natale alleges that she preserved evidence concerning **Massachusetts court audio, court documents, pleadings, litigation materials, and other court-related information** obtained, displayed, read, discussed, played, published, and/or republished in Internet content concerning Plaintiff Diana Natale, including evidence concerning audio originating from Massachusetts court proceedings.

**206.** Plaintiff Diana Natale seeks discovery concerning the **original source, method of acquisition or access, access path, account or device used, possession, creation of links or copies, transmission path, recipients, publication, republication, and subsequent dissemination of private electronic material concerning Plaintiff Diana Natale**, including Ring-camera recordings, private communications, court-related audio, and other electronic material alleged in this Complaint. Plaintiff Diana Natale further seeks discovery identifying **the persons who obtained, supplied, transmitted, received, published, or republished such material and communications between Jennifer Jackson Prince and those persons concerning its acquisition, use, transmission, publication, or republication.**

**L. Continuing Republication and Distribution**

**207.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's conduct was **not limited to a single email, Reddit post, YouTube video, livestream, podcast, or other Internet publication**, but constituted repeated and continuing publication, republication, dissemination, and use of material concerning Plaintiff Diana Natale.

**208.** Plaintiff Diana Natale alleges that audiovisual, photographic, written, and electronic material concerning her has repeatedly been **copied, displayed, played, discussed, transmitted,**

**published, republished, and circulated through YouTube, Reddit, podcasts, livestreams, social-media accounts, and other Internet publications and audiences.**

**209.** The material allegedly published and republished has included **videos and photographs concerning Plaintiff Diana Natale and her residence; information concerning her vehicles, movements, and location; private Ring-camera recordings; audio recordings and conversations; private electronic communications; personal and identifying information; photographs and material concerning Keith Natale and Keith Natale's gravesite; Massachusetts court documents and litigation materials; and audio originating from Massachusetts court proceedings.**

**210.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince **personally participated in publishing, displaying, playing, discussing, transmitting, distributing, republishing, promoting, and/or amplifying portions of this material through Internet content specifically concerning Plaintiff Diana Natale.**

**211.** Plaintiff Diana Natale alleges that material published and disseminated concerning her did not remain confined to a single Internet audience or platform, but was **transmitted and circulated among YouTube viewers, Reddit users, podcasts, livestreams, social-media accounts, content creators, and other third parties**, where portions were discussed, copied, displayed, replayed, republished, and further disseminated.

**212.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's **continuing Internet series concerning Plaintiff Diana Natale facilitated and encouraged repeated audience attention to Plaintiff Diana Natale**, including through recurring episodes, livestreams, posts, discussions, and promotion of additional content.

**213.** Plaintiff Diana Natale alleges that promotional material for the continuing series concerning her expressly announced **"NEW EPISODE EVERY FRIDAY!"**, representing to Internet audiences that additional content concerning Plaintiff Diana Natale would continue to be published on a recurring basis.

**214.** Plaintiff Diana Natale alleges that the recurring-series format caused previously published accusations, photographs, recordings, personal information, litigation material, and other content concerning Plaintiff Diana Natale to be **revisited, repeated, repackaged, discussed, and exposed to additional Internet audiences.**

**215.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince continued publishing and participating in Internet content concerning Plaintiff Diana Natale **after receiving repeated notice that Plaintiff Diana Natale disputed and denied the accusations, objected to the publication and dissemination of her private and personal information, and demanded preservation of relevant evidence.**

**216.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince expressly communicated her intention to continue the Internet series concerning Plaintiff Diana Natale, including stating: **"I can talk about you on the internet until the day I die and there is NOTHING you can do about it."**

**217.** Plaintiff Diana Natale further alleges that Jennifer Jackson Prince stated: **"I will continue to work on my series about you and there is nothing you can do about it, nothing, you can not stop me, you will not stop me."**

**218.** Plaintiff Diana Natale alleges that the statements described in ¶¶216–217, together with the recurring publications and the promotion of new episodes, demonstrate that the continued

publication of material concerning Plaintiff Diana Natale was **deliberate and intended to continue rather than accidental or isolated.**

**219.** Plaintiff Diana Natale alleges that repeated publication and republication **expanded the number of persons who could receive, view, hear, copy, discuss, preserve, redistribute, and act upon material concerning Plaintiff Diana Natale**, including false accusations, identifying and location-related information, private electronic material, photographs, recordings, and court-related material.

**220.** Plaintiff Diana Natale alleges that the continuing and cross-platform dissemination caused the alleged harm to **recur and intensify**, including continuing humiliation, fear for her physical safety, loss of privacy and personal security, emotional distress, and concern that persons receiving the material could identify, locate, contact, monitor, confront, or harm Plaintiff Diana Natale.

**221.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's continued publication, republication, participation, and promotion **after receiving notice of Plaintiff Diana Natale's objections and categorical denials** are relevant to Jennifer Jackson Prince's knowledge, intent, applicable standards of fault, causation, damages, and the continuing nature of the alleged harm.

**222.** Plaintiff Diana Natale alleges that the continuing republication and distribution described in this Section forms part of the **cumulative course of conduct underlying the independent civil causes of action pleaded below and supports Plaintiff Diana Natale's claims for damages and appropriately tailored declaratory and equitable relief.**

## IX. CLAIMS FOR RELIEF

### COUNT I - DEFAMATION AND LIBEL

**223.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

**224.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince **published and/or republished to third parties materially false statements of fact concerning Plaintiff Diana Natale**, including accusations that Plaintiff Diana Natale committed serious criminal acts; engaged in sexual misconduct involving minors and neighborhood boys; chained and abused a person in a basement; participated in, possessed knowledge concerning, and/or bore responsibility for the disappearance of Jennifer Fay; and killed, caused, contributed to, and/or bore responsibility for the death of her son, Keith Natale. **Plaintiff Diana Natale categorically and unequivocally denies these accusations.**

**225.** Plaintiff Diana Natale alleges that the challenged statements were presented and reasonably understood by Internet audiences as **statements or assertions of fact concerning Plaintiff Diana Natale**, were materially false, and were published and/or republished by Jennifer Jackson Prince with the degree of fault required by Massachusetts law.

**226.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince had **repeated and direct notice** that Plaintiff Diana Natale disputed and categorically denied the challenged accusations, including through cease-and-desist and other legal notices, communications, objections, and litigation, but nevertheless continued publishing and/or republishing false factual accusations concerning Plaintiff Diana Natale.

**227.** Plaintiff Diana Natale alleges that statements falsely accusing her of **serious criminal conduct and sexual misconduct, including sexual misconduct involving minors**, are

defamatory statements of an especially serious nature and caused substantial injury to Plaintiff Diana Natale's reputation, dignity, and emotional well-being.

**228.** Plaintiff Diana Natale's defamation claim is based upon **materially false factual assertions and actionable republications alleged throughout this Complaint**, including Jennifer Jackson Prince's own publication, republication, adoption, and dissemination of such accusations. Plaintiff Diana Natale does not base this Count merely upon expressions of opinion or rhetorical language that cannot reasonably be understood as asserting defamatory facts.

**229.** As a **direct and proximate result** of Jennifer Jackson Prince's actionable defamatory publications and republications, Plaintiff Diana Natale alleges that she suffered and continues to suffer **injury to reputation, humiliation, embarrassment, severe emotional distress, fear, loss of personal security, and other damages recoverable under law.**

**COUNT II - INVASION OF PRIVACY - G.L. c. 214, § 1B**

**230.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

**231.** Massachusetts G.L. c. 214, § 1B protects a person from **unreasonable, substantial, or serious interference with her privacy.**

**232.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince intentionally obtained, possessed, accessed, transmitted, displayed, published, republished, and/or substantially participated in the dissemination of **private and nonpublic material concerning Plaintiff Diana Natale**, including Ring-camera recordings originating from Plaintiff Diana Natale's residence, private electronic communications, personal and contact information, residential and location information, information concerning her vehicles and movements, and other private electronic material.

**233.** Plaintiff Diana Natale alleges that the privacy interference was **substantial and serious,** including because the material concerned the interior and exterior of her residence, her presence inside her home, her departures and returns, her location and movements, private communications, personal identifying and contact information, and other aspects of her private life and personal security.

**234.** Plaintiff Diana Natale alleges that she **did not authorize or consent to Jennifer Jackson Prince's access to, possession of, transmission of, publication of, republication of, or dissemination of Plaintiff Diana Natale's private Ring-camera recordings, private electronic communications, or other nonpublic private material** alleged in this Complaint.

**235.** As a direct and proximate result of Jennifer Jackson Prince's alleged unreasonable, substantial, and serious interference with Plaintiff Diana Natale's privacy, Plaintiff Diana Natale suffered and continues to suffer **loss of privacy and personal security, fear for her physical safety, humiliation, severe emotional distress, disruption of her daily life, and other damages and harm recoverable under law**, and seeks all damages and other relief legally available for the proven violations.

**COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**236.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

**237.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince **intentionally and/or recklessly engaged in the repeated and continuing course of conduct described throughout this Complaint**, including publishing and republishing serious false accusations of criminal and sexual misconduct; personally attributable threatening and firearm-related videos, photographs, statements, and conduct; dissemination of Plaintiff Diana Natale's private, residential,

identifying, contact, location, vehicle, and movement information; alleged unauthorized acquisition, possession, and dissemination of private electronic material and Ring-camera recordings; age-focused ridicule; and repeated degrading publications involving **Plaintiff Diana Natale's deceased son, Keith Natale, Keith Natale's death, photographs of Keith Natale, and Keith Natale's gravesite.**

**238.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince's conduct, **considered cumulatively and in its full context rather than as isolated incidents**, was extreme and outrageous and exceeded the bounds of decency tolerated in a civilized community.

**239.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince **intended to cause Plaintiff Diana Natale severe emotional distress and/or knew or should have known that severe emotional distress was the likely result of the alleged conduct**, including after Jennifer Jackson Prince received repeated notice of Plaintiff Diana Natale's objections, denials, fear, and demands that the conduct cease.

**240.** Plaintiff Diana Natale alleges that the **repeated, continuing, and escalating nature of the conduct**, including recurring Internet publications and republications, threatening and firearm-related material, disclosure of information capable of identifying or locating Plaintiff Diana Natale, and continued use of deeply personal material concerning Keith Natale and his death, **caused and intensified Plaintiff Diana Natale's emotional distress.**

**241.** As a direct and proximate result of Jennifer Jackson Prince's intentional and/or reckless conduct, Plaintiff Diana Natale alleges that she suffered and continues to suffer **severe emotional distress, fear for her physical safety, humiliation, loss of privacy and personal security, disruption of her ordinary daily life, and other legally recoverable injury and damages.**

**COUNT IV - STORED COMMUNICATIONS ACT - 18 U.S.C. §§ 2701 AND 2707**

**242.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

**243.** The Stored Communications Act, 18 U.S.C. § 2701, prohibits, subject to statutory exceptions, intentionally accessing without authorization a facility through which an electronic communication service is provided, or intentionally exceeding authorization to access such a facility, and thereby obtaining, altering, or preventing authorized access to a wire or electronic communication while it is in electronic storage.

**244.** Under 18 U.S.C. § 2707, a person aggrieved by a knowing or intentional violation of the Stored Communications Act may bring a civil action and seek the relief authorized by that statute, including appropriate equitable or declaratory relief and damages where the statutory requirements are established.

**245.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince **knowingly and/or intentionally obtained, accessed, and/or participated in obtaining or accessing stored electronic communications and private Ring-related material belonging to Plaintiff Diana Natale without Plaintiff Diana Natale's authorization or consent.** Plaintiff Diana Natale alleges that numerous Ring recordings originating from her residence came into Jennifer Jackson Prince's possession and were transmitted, displayed, published, and/or disseminated as described throughout this Complaint.

**246.** Plaintiff Diana Natale **never authorized Jennifer Jackson Prince to access Plaintiff Diana Natale's Ring account, account credentials, private cameras, cellular telephone, private electronic accounts, stored communications, or other nonpublic electronically**

**stored material**, nor did Plaintiff Diana Natale provide Jennifer Jackson Prince with permission to obtain such material from those accounts or systems.

**247.** Plaintiff Diana Natale does not presently know the precise technical mechanism by which Jennifer Jackson Prince allegedly obtained or gained access to the private stored electronic material. Plaintiff Diana Natale seeks discovery concerning **accounts, devices, login and access records, credentials, shared-user permissions, linked accounts, creation and transmission of Ring share links, Internet Protocol and other available access information, communications concerning the recordings, and communications between Jennifer Jackson Prince and any person who supplied, obtained, accessed, transmitted, or shared the recordings or other private electronic material.**

**248.** Plaintiff Diana Natale alleges a violation of the Stored Communications Act **to the extent discovery and evidence establish that Jennifer Jackson Prince knowingly or intentionally accessed without authorization, exceeded authorized access to, and/or knowingly or intentionally participated in unauthorized access satisfying the requirements of 18 U.S.C. § 2701.** Plaintiff Diana Natale seeks the damages, equitable or declaratory relief, costs, and other remedies authorized by **18 U.S.C. § 2707** upon proof of the statutory requirements.

**COUNT V - MASSACHUSETTS WIRETAP ACT - G.L. c. 272, § 99, INCLUDING § 99(Q)**

**249.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

**250.** Massachusetts G.L. c. 272, § 99 prohibits, subject to statutory exceptions, the willful interception of wire or oral communications and certain willful disclosure or use of the contents of communications obtained through an interception prohibited by the statute. G.L. c. 272, §

99(Q) provides a civil remedy to an aggrieved person where the statutory requirements are established.

251. Plaintiff Diana Natale alleges that Jennifer Jackson Prince **obtained, possessed, disclosed, used, played, published, republished, and/or participated in the dissemination of private audio, conversations, communications, and other recorded material concerning Plaintiff Diana Natale**, including material that Plaintiff Diana Natale alleges she did not authorize Jennifer Jackson Prince to intercept, obtain, access, possess, disclose, use, or publish. Plaintiff Diana Natale further alleges that Jennifer Jackson Prince obtained and published audio originating from Massachusetts court proceedings as described above.

252. Plaintiff Diana Natale presently does not know the precise manner in which each challenged audio recording or communication was originally created, intercepted, obtained, or transmitted to Jennifer Jackson Prince. Plaintiff Diana Natale seeks discovery concerning **the original source of each recording or communication, the person or device that made or captured it, whether any interception occurred without the knowledge or permission required by Massachusetts law, how Jennifer Jackson Prince obtained it, Jennifer Jackson Prince's knowledge concerning its source and method of acquisition, and Jennifer Jackson Prince's subsequent disclosure, use, publication, republication, and transmission of the material.**

253. Plaintiff Diana Natale alleges that communications and recordings concerning Plaintiff Diana Natale were **intercepted, disclosed, used, played, transmitted, and/or published without Plaintiff Diana Natale's authorization**, and that Jennifer Jackson Prince participated in the interception, disclosure, and/or use of such communications **to the extent discovery and evidence establish the elements required by G.L. c. 272, § 99.**

**254.** Plaintiff Diana Natale alleges that the challenged material includes **private audio and communications concerning Plaintiff Diana Natale and other recordings described throughout this Complaint.** Plaintiff Diana Natale seeks discovery to determine which recordings or communications resulted from an interception within the meaning of G.L. c. 272, § 99, who made or procured each interception, how each recording was obtained, and what Jennifer Jackson Prince knew concerning its source and method of acquisition.

**255.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince is liable under this Count **to the extent the evidence establishes that Jennifer Jackson Prince willfully intercepted, participated in or procured an unlawful interception, and/or willfully disclosed or used the contents of a communication with the knowledge required by G.L. c. 272, § 99.**

**256.** As a result of each violation established under this Count, Plaintiff Diana Natale seeks the **civil remedies authorized by G.L. c. 272, § 99(Q), including actual damages, statutory damages where applicable, punitive damages where authorized and proved, reasonable litigation costs and attorney's fees only to the extent legally available, and such preliminary, equitable, declaratory, or other relief as the statute and law authorize.**

**COUNT VI - UNAUTHORIZED USE OF NAME, PORTRAIT OR PICTURE - G.L. c. 214, § 3A**

**257.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

**258.** Massachusetts G.L. c. 214, § 3A provides a civil remedy where a person's **name, portrait, or picture is used within the Commonwealth for advertising purposes or for purposes of trade without that person's written consent**, subject to the requirements and limitations of the statute.

259. Plaintiff Diana Natale alleges that Jennifer Jackson Prince repeatedly used **Plaintiff Diana Natale's name, photographs, likeness, portrait, and pictures in connection with the creation, publication, promotion, and continuation of an Internet series specifically devoted to Plaintiff Diana Natale**, including promotional material advertising **"NEW EPISODE EVERY FRIDAY!"** and other publications designed to attract, maintain, and increase viewer and audience attention to continuing content concerning Plaintiff Diana Natale.

260. Plaintiff Diana Natale **never provided Jennifer Jackson Prince with written consent or other authorization to use Plaintiff Diana Natale's name, portrait, likeness, photographs, or pictures for advertising purposes or purposes of trade.**

261. Plaintiff Diana Natale alleges, upon information and belief and subject to discovery, that Jennifer Jackson Prince used Plaintiff Diana Natale's **name, portrait, likeness, photographs, and/or pictures in connection with the promotion, monetization, commercial exploitation, advertising, audience growth, and/or other purposes of trade associated with the continuing Internet series**, to the extent established through YouTube and other platform records, monetization records, advertising and revenue records, subscriber and audience information, financial records, and other discovery.

262. Plaintiff Diana Natale alleges that the conduct actionable under this Count includes **uses of Plaintiff Diana Natale's identity and image that discovery establishes were made for advertising purposes or purposes of trade within the meaning of G.L. c. 214, § 3A**, including qualifying promotional or commercial uses associated with the continuing series concerning Plaintiff Diana Natale.

263. Plaintiff Diana Natale seeks discovery concerning **Jennifer Jackson Prince's use of Plaintiff Diana Natale's name, portrait, likeness, photographs, and pictures in promotional**

**materials; the monetization status of relevant accounts, videos, livestreams, and publications; advertising or other revenue generated in connection with such content; subscriber and audience growth; promotional activity; and any other commercial or trade-related benefit associated with the use of Plaintiff Diana Natale's identity or image.**

**264.** As a direct and proximate result of each unauthorized use established to violate G.L. c. 214, § 3A, Plaintiff Diana Natale alleges injury and seeks **the damages and injunctive or other relief authorized by G.L. c. 214, § 3A,** together with any other relief legally available upon proof of the claim.

**COUNT VII - FEDERAL WIRETAP ACT - 18 U.S.C. §§ 2511 AND 2520**

**265.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

**266.** The Federal Wiretap Act, 18 U.S.C. § 2511, prohibits, subject to statutory exceptions, the intentional interception of wire, oral, or electronic communications and prohibits specified intentional disclosure or use of the contents of communications where the person knows or has reason to know that the information was obtained through an interception prohibited by the statute.

**267.** Under 18 U.S.C. § 2520, a person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the Federal Wiretap Act may bring a civil action and seek the relief authorized by that statute.

**268.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince **intentionally intercepted, endeavored to intercept, procured another person to intercept, disclosed, and/or intentionally used communications of Plaintiff Diana Natale**, to the extent discovery and

evidence establish a qualifying unlawful interception and the knowledge, intent, and other elements required by 18 U.S.C. § 2511.

**269.** Plaintiff Diana Natale alleges that Jennifer Jackson Prince **obtained, possessed, played, displayed, transmitted, published, republished, and/or used private audio, conversations, electronic communications, recordings, and other electronic material concerning Plaintiff Diana Natale** as described throughout this Complaint. Plaintiff Diana Natale did not authorize Jennifer Jackson Prince to intercept Plaintiff Diana Natale's private communications or to procure another person to do so.

**270.** Plaintiff Diana Natale presently does not know the precise method by which each challenged communication was originally captured, intercepted, obtained, or transmitted to Jennifer Jackson Prince. Plaintiff Diana Natale therefore seeks discovery concerning **the original source of each communication or recording; the person, account, or device responsible for its acquisition or interception; the technical means used; communications concerning its acquisition and transmission; and Jennifer Jackson Prince's knowledge of its source and method of acquisition before any disclosure or use.**

**271.** To the extent the evidence establishes violations of 18 U.S.C. § 2511, Plaintiff Diana Natale seeks the **civil remedies authorized by 18 U.S.C. § 2520**, including appropriate preliminary and equitable or declaratory relief, damages authorized by the statute, punitive damages where the statutory requirements are established, reasonable litigation costs, and reasonable attorney's fees only to the extent legally available.

## COUNT VIII - CONCERTED ACTION / SUBSTANTIAL ASSISTANCE

**272.** Plaintiff Diana Natale realleges and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

273. Plaintiff Diana Natale alleges that Jennifer Jackson Prince **acted in concert with, participated with, encouraged, and/or substantially assisted one or more other persons** in publishing, republishing, distributing, transmitting, amplifying, and disseminating tortious material and conduct directed toward Plaintiff Diana Natale, including false factual accusations, private and electronic material, recordings, photographs, personal and identifying information, and other material described throughout this Complaint.

274. Plaintiff Diana Natale alleges that preserved evidence reflects **coordinated and interconnected Internet activity involving Jennifer Jackson Prince and other participants**, including the sharing and transfer of material concerning Plaintiff Diana Natale; joint, sequential, and repeated publications; YouTube videos and livestream participation; podcast participation; Reddit activity; communications concerning Plaintiff Diana Natale; and the acquisition, exchange, republication, and redistribution of photographs, recordings, court-related material, private electronic material, and other information concerning Plaintiff Diana Natale.

275. Plaintiff Diana Natale alleges that Jennifer Jackson Prince **knew of the underlying wrongful conduct and substantially assisted, encouraged, participated in, adopted, republished, promoted, and/or facilitated that conduct**, including by supplying or redistributing material, participating in publications and livestreams, encouraging continuing audience attention and interaction, and contributing to the continuing dissemination of material concerning Plaintiff Diana Natale.

276. Plaintiff Diana Natale alleges this Count in connection with **independently actionable underlying torts established in this action**, including defamation, invasion of privacy, and intentional infliction of emotional distress, and alleges that Jennifer Jackson Prince's knowing

participation, encouragement, and/or substantial assistance contributed to those underlying wrongs.

277. Plaintiff Diana Natale alleges that liability under this Count is based upon **Jennifer Jackson Prince's own knowing participation, encouragement, substantial assistance, adoption, republication, facilitation, and concerted conduct**, as established through preserved evidence and discovery, rather than merely upon the existence of communications or associations with other persons.

278. Plaintiff Diana Natale alleges that Jennifer Jackson Prince's concerted conduct, participation, encouragement, and/or substantial assistance was a **substantial factor in causing and magnifying the reputational injury, invasion of privacy, severe emotional distress, fear, humiliation, loss of personal security, and other injuries and damages alleged throughout this Complaint.**

## X. DAMAGES

279. As a direct and proximate result of Jennifer Jackson Prince's actionable conduct alleged and proved under the claims set forth in this Complaint, Plaintiff Diana Natale alleges that she has suffered and continues to suffer **injury to her reputation; humiliation and embarrassment; loss of privacy and personal security; severe emotional distress; fear for her physical safety; disruption of her ordinary daily life; and other compensable injuries and damages recognized by law.**

280. Plaintiff Diana Natale alleges that the **repeated, continuing, and cross-platform publication and republication** of material concerning her magnified the duration, scope, audience, and severity of the harm because accusations, private material, photographs, recordings, personal and identifying information, and other content concerning Plaintiff Diana

Natale were repeatedly displayed, discussed, republished, redistributed, and exposed to additional Internet audiences.

**281.** Plaintiff Diana Natale seeks **statutory damages and statutory remedies** to the extent authorized by the Stored Communications Act, 18 U.S.C. § 2707; the Federal Wiretap Act, 18 U.S.C. § 2520; the Massachusetts Wiretap Act, G.L. c. 272, § 99(Q); G.L. c. 214, § 3A; and any other pleaded claim for which such relief is legally authorized, upon proof of the applicable statutory requirements.

**282.** Plaintiff Diana Natale seeks **punitive or exemplary damages to the extent authorized by applicable federal or Massachusetts law and supported by the evidence**, including under those statutory claims for which punitive damages are expressly available upon satisfaction of the governing legal requirements.

**283.** Plaintiff Diana Natale alleges that the **amount in controversy exceeds $75,000, exclusive of interest and costs**, based upon the cumulative injuries, damages, statutory remedies, and other legally recoverable relief alleged in this Complaint.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Diana Natale respectfully requests that this Court:

**A.** Enter judgment in favor of Plaintiff Diana Natale and against Jennifer Jackson Prince on each cause of action established by the evidence;

**B.** Award Plaintiff Diana Natale compensatory damages in an amount to be determined by the jury for all legally recoverable injuries, including reputational injury, humiliation, emotional distress, invasion and loss of privacy, loss of personal security, and other compensable harm caused by Jennifer Jackson Prince's actionable conduct;

C. Award all statutory, liquidated, and other damages and remedies authorized under **18 U.S.C. § 2707, 18 U.S.C. § 2520, and G.L. c. 272, § 99(Q)** upon proof of the applicable statutory requirements;

**D.** Award damages and appropriate injunctive relief under **G.L. c. 214, § 3A**, and, upon proof that Jennifer Jackson Prince knowingly used Plaintiff Diana Natale's name, portrait, or picture in a manner prohibited by that statute, award **treble damages to the extent authorized by G.L. c. 214, § 3A**;

**E.** Award punitive or exemplary damages to the extent authorized by applicable federal or Massachusetts law and supported by the evidence;

**F.** Award Plaintiff Diana Natale taxable costs, prejudgment and post-judgment interest, litigation disbursements and expenses, and any other costs or fees recoverable by Plaintiff Diana Natale to the extent authorized by the applicable statute or other law;

**G.** Enter appropriate declaratory, injunctive, and equitable relief, narrowly tailored to conduct established to be unlawful in this action, including relief necessary to prevent continuing or repeated unlawful access to, acquisition of, use of, disclosure of, or dissemination of Plaintiff Diana Natale's private electronic communications, recordings, personal information, or other protected private material, to the extent such relief is legally available and consistent with applicable constitutional requirements;

**H.** Grant such other and further relief as this Court deems just and proper.

## REFERRAL TO LAW ENFORCEMENT AND PROSECUTORIAL AUTHORITIES

Plaintiff Diana Natale further states that nothing in this civil action is intended to waive, restrict, or limit her right to report the conduct alleged herein, submit preserved evidence, recordings, electronic evidence, communications, threats, firearm-related evidence, and other relevant

material to appropriate local, state, and/or federal law-enforcement and prosecutorial authorities, including the appropriate District Attorney, and to request an independent investigation. Plaintiff Diana Natale reserves the right to cooperate fully with such authorities and to provide additional evidence as requested. Any determination whether criminal investigation, charges, prosecution, warrants, interstate process, or other criminal-law proceedings are warranted remains within the authority and discretion of the appropriate law-enforcement and prosecutorial authorities.

Respectfully submitted,

/s/ Diana Natale

Diana Natale, Plaintiff, Pro Se

100 Village Way

Westport, Massachusetts 02790

Telephone: 774-826-9260

Email: diana4u2010@gmail.com

Dated: October 5, 2026